Gordon M. Cowan, Esq.
SBN# 1781
Law Office of Gordon M. Cowan
P.O. Box 17952
Reno, Nevada  89511
(775) 786-6111

Katherine A. Meyer
Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C.  20009
(202)  588-5206

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

AMERICAN WILD HORSE PRESERVATION          )
CAMPAIGN                                                                      )
P.O. Box 1048                                                                 )
Hillsborough, NC 27278,                                                )
                                                                                       )
WESTERN WATERSHEDS PROJECT                          )
P.O. Box 1160                                                                )
Pinedale, WY 82941,                                                     )
                                                                                       )
RETURN TO  FREEDOM                                            )          Civ No.
4115 Jalama Rd                                                             )
Lompoc, CA  93436,                                                    )
                                                                                       )
CLOUD FOUNDATION                                              )
107 South 7th Street                                                      )
Colorado Springs, CO  80905,                                    )
                                                                                       )
LAURA LEIGH                                                            )
c/o 10775 Double R Blvd                                            )
Reno, Nevada  89521,                                                 )
                                                                                       )
                                    Plaintiffs,                              )
                                                                                       )
                        v.                                                        )
                                                                                       )

TOM VILSACK, Secretary                    )
Department of Agriculture                 )
1400 Independence Ave., S.W.              )
Washington, DC 20250,                     )
                                          )
TOM TIDWELL, Chief                        )
Forest Service                            )
1400 Independence Ave., S.W.              )
Washington, DC 20250,                     )
                                          )
FALLON LIVESTOCK EXCHANGE, INC.           )
2055 Trento Lane                          )
Fallow, Nevada  89406,                    )
                                          )
                    Defendants.           )


## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This case challenges a recent decision by the United States Forest Service ("Service")  allowing the roundup of wild free-roaming horses in Nevada that are required to be protected by the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act" or "Act"), 16 U.S.C. § 1331 *et seq.*  These unlawfully rounded-up wild horses have now been sent to an auction facility, and, *as early as Saturday, August 17, 2013, will be sold to private buyers* and, according to the government itself, very possibly purchased for slaughter.  The Forest Service's decision violates the Wild Horse Act, which provides that such horses are to be protected from capture, harassment, and slaughter.   Accordingly, defendants' actions are arbitrary and capricious, an abuse of discretion, and not in accordance with law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

2.      The roundup of these horses, referred to as the "Fort McDermitt Roundup," occurred between August 10 and August 13, 2013, and possibly earlier, without any public notice or opportunity for comment; the horses have already been sent to the auction facility; and

*the auction is scheduled to begin on Saturday, August 17, 2013*.  Accordingly, Plaintiffs are

filing a Verified Complaint and request for a temporary restraining order pursuant to Fed. R. Civ.

P. 65(b) to prevent the sale of any wild horses in violation of the Wild Horse Act.

<u>JURISDICTION</u>

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

<u>PARTIES</u>

4.      Plaintiff American Wild Horse Preservation Campaign ("AWHPC") is a broad-

based coalition of public interest groups, environmentalists, humane organizations, and historical

societies representing over ten million supporters.  Members of the organizations represented by

AWHPC enjoy viewing, photographing, and studying wild horses in the Little Owyhee Herd

Management Area ("HMA") – from which the wild horses at issue would have originated.  The

decision by the Forest Service to allow free-roaming horses to be rounded up on federal lands in

close proximity to the Little Owyhee HMA reduces the opportunities of AWHPC's  coalitions

members to engage in these recreational activities, and thus impairs their interests in observing,

studying, and conserving these wild horses.  A court order requiring Defendants to ensure that no

wild horses are sold at auction and that these horses are returned to the public lands will redress

these injuries.

5.      AWHPC spends considerable resources every year in efforts to protect wild

horses from being removed from the public lands in the West.  As a result of Defendants'

unlawful actions in allowing wild horses to be rounded up or herded and sent to a private auction

as part of the Fort McDermitt Roundup, AWHPC has had to shift its very limited resources to

advocating against these actions, including publicizing what has occurred and seeking public

support for putting a stop to the upcoming auction of wild horses and the transfer of wild horses

to slaughterhouses – all of which has been a drain on AWHPC's resources that could be spent on other activities needed to protect wild horses.  If Plaintiffs prevail in this action, this resource injury will be redressed and AWHPC will be able to shift its resources to other projects to preserve and protect wild horses.

6.      Plaintiff Western Watersheds Project ("WWP") is a non-profit conservation group founded in 1993 with 1,400 members and field offices in Idaho, Montana, Utah, Wyoming, Arizona and California. WWP protects and restores western watersheds and wildlife through education, public policy initiatives, and litigation – with a particular focus on public lands management in eight western states.  WWP brings this case on behalf of one or more of its members who regularly use the public lands of both the Humboldt-Toiyabe National Forest where the Roundup was authorized, the BLM lands that are adjacent to this Forest, and the Little Owyhee HMA, and who enjoy viewing and studying the wild horses that live in this area   The decision by the Forest Service to allow the roundup of wild horses in this region of Nevada impairs these aesthetic, recreational, and scientific interests.  These injuries will be redressed if Plaintiffs prevail in this action and Defendants are required to ensure that wild horses collected for the auction are returned to the range.

7.      Return to Freedom is a non-profit organization that focuses on keeping natural family bands of wild horses intact and on their rangelands.  Its educational programs attract university students, photographers, writers and others from all over the world and include providing opportunities to view wild horses in the wild, including in Nevada.  Return to Freedom's Director Neda DeMayo enjoys viewing, photographing, and studying wild horses throughout the west, including in Nevada.  She also enjoys taking volunteers and program participants out into wild horse habitats specifically in Nevada, Oregon and California.  A

member of Return to Freedom's Board spends time in Little Owyhee which is the subject of her article and the opening chapter of her novel.  The decision at issue here will impair these interests by diminishing Ms. DeMayo's and others' opportunities to see wild horses in Nevada and in the future.  These injuries will be redressed if Plaintiffs prevail and any wild horses collected as part of the Fort McDermitt Roundup are returned to the range.

8.     Plaintiff Cloud Foundation is a non-profit organization located in Colorado Springs, Colorado.  The organization is named after "Cloud" – a pale palomino wild horse stallion living in the Pryor Mountains of Montana.  The Cloud Foundation is dedicated to the preservation of wild horses on public lands in the west.  Its members enjoy viewing, studying, photographing, and filming wild horses in the natural habitats, including in regions of Nevada where wild horses may roam.  The decision by the Forest Service to allow the roundup of wild horses in Nevada impairs these interests by reducing the opportunity of the organization's members to see wild horses there.  This injury will be redressed if Plaintiffs prevail in this action and Defendants are required to ensure that wild horses collected for the auction are return to the range where they belong.

9.     Plaintiff Laura Leigh is an award winning illustrator, journalist / videographer and reporter on issues dealing with the American West.   Her published articles and video have appeared in many venues including Horseback Magazine, KLAS-TV and CNN. Ms. Leigh is President and founder of Wild Horse Education, a non-profit group devoted to documenting, reporting to the public and advocating on issues involving wild horses on public lands.  Ms. Leigh has attended more roundups of wild horses in the past 36 months than any government personnel, journalist, or any other member of the public, in her attempts to accurately document wild horses in the wild, and in documenting the  management of wild horses.  In the past two

years Ms. Leigh filmed/recorded thousands of hours of video and has amassed more than a

hundred-thousand photos of wild horses on public lands.  She has visited and will continue to

visit the Owyhee Herd Management Area in Nevada, and other public lands in Nevada to view,

photograph, and study wild horses.  Defendants' actions impair Ms. Leigh's aesthetic,

educational, professional, and recreational interests in wild horses by diminishing her

opportunities to view wild horses in the Owyhee HMA and other public lands where the Fort

McDermitt Roundup has occurred.   Her injuries will be redressed if Plaintiffs prevail in this case

because wild horses that have been removed from the range as a result of the Roundup will be

returned to the range.

10.    Defendant Tom Vilsack is the Secretary of the Department of Agriculture, the

parent agency of the Forest Service, and, accordingly, is ultimately responsible for the Service's

decision challenged here.

11.    Defendant Tom Tidwell is the Chief of the Forest Service, and therefore is also

responsible for the Service's decision at issue.

12.    Defendant Fallon Livestock Exchange ("Exchange") currently has possession of

the rounded up horses and is the entity that is holding the auction scheduled for Saturday, August

17, 2013.  Accordingly, it is named as a necessary party pursuant to Fed. R. Civ. P. 19 in the

event the Court needs to direct any of its injunctive relief to the Exchange to ensure that no wild

horses are sold at this auction.

## FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

### A.    Statutory And Regulatory Framework

13.    Finding that "wild free-roaming horses and burros are living symbols of the

historic and pioneer spirit of the West," and that "they contribute to the diversity of life forms

6

within the Nation and enrich the lives of the American people," Congress enacted the Wild

Horse Act to ensure that "wild-free roaming horses and burros shall be protected from capture,

branding, harassment, [and] death," and will "be considered in the area where presently found, as

an integral part of the natural system of the public lands."  16 U.S.C. § 1331.

14.    "Wild free-roaming horses" are defined under the Act as "all unbranded and

unclaimed horses . . . on public lands of the United States," which include lands "administered

by the Secretary of the Interior through the Bureau of Land Management or by the Secretary of

Agriculture through the Forest Service."  *Id.* §§ 1332(b), (d); *see also* 36 C.F.R. § 222.60(b)(13).

Wild free-roaming horses lose their status as wild horses only in certain enumerated

circumstances:  where BLM or the Forest Service transfers title through adoption after more than

one year and after making a finding that the recipient has provided "humane conditions,

treatment and care;" where the horses have died; or if they are sold pursuant to the requirements

of the Act.  16 U.S.C. §§ 1333(c), (d)(1)-(5), (e).  Wild horses may only be sold if BLM or the

Service determines their numbers are "in excess" in a Herd Management Area *and* the individual

horses are "more than 10 years of age" or have "been offered unsuccessfully for adoption at least

3 times."  *Id.* § 1333(e).

15.    The Wild Horse Act provides that the Secretaries of the Interior and Agriculture

"shall manage wild free-roaming horses and burros as components of the public lands . . .  in a

manner that is designed to achieve and maintain a thriving natural ecological balance on the

public lands."  *Id.*  § 1331.  To further ensure this objective, the statute provides that "[a]ll

management activities shall be at the minimal feasible level."  *Id.* § 1333(a).  The Secretaries'

duties have been delegated to the BLM with respect to horses on BLM lands and to the Service

with respect to horses on Service lands.  43 C.F.R. § 4700.0-3; 36 C.F.R. § 222.60.

16.     As to wild horses that stray off public lands, "[i]n no event shall such wild free-roaming horses . . . be destroyed except by agents of the Secretary." 16 U.S.C. § 1334. In addition, a private landowner may only maintain wild horses on his land "if he does so in a manner that protects them from harassment, and if the animals were not willfully removed or enticed from the public lands." *Id.*

17.     The Wild Horse Act imposes criminal liability for "willfully" removing wild horses from public lands, converting wild horses to private use, maliciously causing the harassment of a wild horse, processing the remains of a wild horse into commercial products, or selling a wild horse on private land. *Id.* § 1338(a).

18.     Forest Service regulations require that the Service "protect, manage, and control wild free-roaming horses . . . on lands of the National Forest System" and "*maintain vigilance for the welfare of wild free-roaming horses . . . that wander or migrate from the National Forest System.*" 36 C.F.R. § 222.60. The Forest Service may not remove wild horses from public lands without consulting with the U.S. Fish and Wildlife Service, state wildlife agencies, and other individuals and organizations, *id.* § 222.61, and, pursuant to its duty to protect wild horses that have wandered off its lands and must "act immediately through appropriate administrative or criminal and civil judicial procedures to provide them the protective measures of the Act at any time he has cause to believe its provisions are being violated." *Id.* § 222.65. The Service may only impound horses that are not wild horses and have "not become intermingled with wild free-roaming horses." *Id.* § 222.63.

19.     Slaughter of wild horses, or the sale of wild horses for slaughter, is prohibited under the Act, 16 U.S.C. § 1333(b)(2)(C), and, for several years, Congress has also prohibited the slaughter of excess wild horses that have been removed from the public lands and not been

adopted.

**B.      Wild Horses On BLM And Forest Service Lands In Western Nevada**

20.     The BLM manages the Little Owyhee HMA in eastern Humboldt and western

Elko counties in Nevada, as well as neighboring BLM lands that are not part of the HMA.  The

BLM has acknowledged that protected wild horses reside outside of the HMA.  *See*

Environmental Assessment Owyhee Complex Herd Management Area (DOI-BLM-NV-W010-

0055-DA, at 1) (stating that "The Owyhee Complex consists of approximately 1,055,023 total

acres . . . but the [roundup] area consists of approximately 2,047,281 acres . . . *which*

*encompasses additional lands not designated for wild management where wild horses are*

*residing outside of the Owyhee Complex*.  Wild horses have moved outside of the HMAs in

search of forage, water, and space due to the current over-population of wild horses in this area

as well as the current drought conditions." ).  The areas to which wild horses move include the

Santa Rosa District of the Humboldt-Toiyabe National Forest.  *Compare* Map included with the

Environmental Assessment for the Owyhee Complex Gather *with* Map included as part of the

Operating Plan for the Fort McDermitt Roundup (showing that the areas border each other).

21.     The Forest Service manages the Humboldt-Toiyabe National Forest, which is

located as close as eight to ten miles from the Little Owyhee HMA.

22.     Wild horses protected by the Wild Horse Act use the Santa Rosa District of the

Humboldt-Toiyabe National Forest, the adjacent BLM lands, and the Little Owyhee HMA.

23.     Wild horses can easily cover eight to ten miles – the distance from the HMA to

the National Forest – in several hours in this region, particularly due to the lack of properly

functioning fences in this region that, according to the Forest Service itself, have been ineffective

at controlling livestock trespass on National Forest lands.  *See, e.g.*, July 8, 2010 Service Fence

Construction and Reconstruction Project.

24.     When BLM conducts wild horse roundups of the Little Owyhee HMA to remove "excess" horses as permitted under the Wild Horse Act, the roundup area extends to the edge of the Humboldt-Toiyabe National Forest.  *See, e.g.*, BLM, Environmental Assessment, Owyhee Complex Gather Area, available at https://www.blm.gov/epl-front-office/projects/nepa/33902/40772/42882/Figure_1_Owyhee_Complex_Gather_Area.pdf.

25.     The BLM's own records indicate that in 2011 and 2012 BLM staff observed wild horses outside of the Little Owyhee HMA.  *Id.* at 5.   The BLM Winnemucca District which manages the Little Owyhee HMA stated in the Final Environmental Assessment Owyhee Complex Herd Management Area Gather (DOI-BLM-NV-W010-2012-0055-DA) (herein "EA") that "The Little Owyhee has a history of limited water issues during times of severe drought." The EA goes on to state, "Based on current conditions and monitoring data, the Owyhee Complex has been identified as experiencing an escalating situation due to unforeseen drought conditions that could become an emergency situation ..."

26.     Presently, drought conditions persist in the Little Owyhee HMA and there is greater access to water in the more verdant BLM and Service lands outside the HMA which would naturally attract horses to these lands.

### C.     The The Forest Service's Decision To Allow A Roundup Of Free-Roaming Horses In Nevada

27.     On May 30, 2013, without any public notice or opportunity to comment, the Forest Service entered into a Participating Agreement with the Fort McDermitt Tribal Council – the governing body of the Fort McDermitt Paiute and Shoshone Tribe (hereinafter referred to as "the Tribal Council") –  to roundup and remove what are supposed to be only tribally-owned horses from both tribal, BLM, and Service lands.  The Service entered into the Agreement under

the Wyden Amendment, which provides that the Forest Service may enter into such agreements "to conduct activities on public or private lands" for the "[p]rotection, restoration, and enhancement of fish and wildlife habitat and other resources."  Section 323(a) of the Department of the Interior and Related Appropriations Act (1999), as included in Pub. L. 105-277, Div. A, Section 101(e), as amended by Pub. L. 109-54, Sec. 434.

28.     The Agreement states that "[i]t is in the mutual interest" of the Tribal Council and the Forest Service "to remove unauthorized horses from the National Forest system lands to enhance the habitat and range condition on Forest Service System lands, to reduce nuisances and hazards from horses to Fort McDermitt residents and to enhance habitat range condition[s] on Fort McDermitt Paiute & Shoshone Tribal lands."

29.     The Agreement provides that the Tribal Council "shall" (a) work with the Forest Service to remove horses from both the tribal and Forest Service lands; (b) "take and retain legal control of all horses moved to tribal lands until either returned to the owners or properly disposed of;" (c) "[o]btain written authorization from horse owners to sell their horses," and "[d]etermine tribal policy on ownership of horses without brands or known owners."

30.     The Participating Agreement also provides that the Forest Service "shall" "acquire the necessary permits authorizing the contractor and support crews to trail or herd across BLM administered public lands to site(s) identified in the Operating Plan."

31.     The Participating Agreement further provides that the Forest Service "shall" provide a contractor to gather and move horses "off the Santa Rosa Ranger District" of the National Forest, and adjoining BLM and tribal lands, and that the contractor will transport all gathered horses to be sold during the week of the gather at the Fallon Livestock Exchange.

32.    The Agreement further provides that the Forest Service "shall . . . [r]etain control over all impounded animals gathered off NFS [National Forest Service] lands until delivered to the designated tribal holding facility," and that it shall also "[r]etain control of identified non-tribal horses for owner redemption or Forest Service disposition . . . ."

33.    The "Operating Plan" for the Fort McDermitt Roundup, which is incorporated in the Participating Agreement, provides that the "objective" of the Roundup is to "[s]afely gather horses, determine ownership, and either transport to market or return to owners according to Fort McDermitt Tribal law & code."

34.    The Operating Plan further provides that each day of the roundup, the Tribal Council will take "possession of unbranded / unknown ownership / unclaimed horses," which will be transported to the "Fallon Livestock Exchange, Inc. stock yard" the following morning at 5 a.m.

35.    Although (a) the Forest Service and BLM lands in question are used by wild horses due to their close proximity to the Little Owyhee HMA and the lack of functional fencing; (b) the Forest Service and BLM lands provide water sources that are not as readily available in the Little Owyhee HMA; and (c) the Forest Service has a statutory duty to protect wild horses from being captured and removed from the public lands, the Forest Service did not include in the Participating Agreement or the Operating Plan any procedures to ensure that wild horses are not collected as part of the Roundup and sent to auction.

36.    Neither the Participating Agreement nor the Operating plan made any determination that there is an excess of wild horses on Service or BLM lands pursuant to the Wild Horse Act, 16 U.S.C. §§ 1332(f), 1333(a), nor have the defendants otherwise made any such determination.

37.     The Fallon Livestock Exchange is a public auction, frequented by buyers who purchase horses to be slaughtered in Mexico and/or Canada.

38.     On June 14, 2013, Forest Service District Ranger Jeff Ulrich signed a Notice of Intent to Impound Unauthorized Livestock in the Santa Rosa Ranger District.  That notice explained that on or after August 1, 2013, "all unauthorized livestock found upon the National Forest System Lands or other lands within" the specified area "will be impounded by the United States Forest Service."  The notice further explained that "[a]ll livestock gathered will be transported to the Fort McDermitt Paiute & Shoshone reservation for disposition consistent with Fort McDermitt Tribal law and order code and the Fort McDermitt Horse Gather 2013 Participating Agreement" between the Service and the Tribal Council.  The notice identified the same BLM lands that are included in the January 2013 BLM wild horse Owyhee Complex roundup -- those lands are identified on the Notice Map, in the areas marked T47NR41E, T46NR41E, T45NR41E.

39.     On August 7, 2013, Plaintiffs' Counsel contacted District Ranger Ulrich, who stated that based on the agency's experience it expected that "at least 95%" of the horses that would be removed from the range pursuant to the notice would be branded – i.e., they would be domesticated horses rather than federally protected wild horses.  *See* Exhibit A (Declaration of Bill Eubanks).  District Ranger Ulrich also confirmed that a possible outcome for the horses subject to impoundment and auction is sale to third parties for the purpose of slaughter.  *See id.*

40.     On August 8, 2013, Plaintiffs sent the Service a letter expressing concern that unbranded horses collected during the Roundup may be wild horses, and that, accordingly, the Service would be violating both the Wild Horse Act and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq,, if it allowed the Roundup to continue.  *See* Exhibit B.

41.     On August 9, 2013, the Service represented to Plaintiffs that members of the Fort McDermitt Tribe – in coordination with the Service – had been "working hard" for days

13

preparing for the roundup by pushing horses from public lands toward the trap sites for the roundup that had originally been scheduled to begin on August 9.

42.     On August 9, the Service also indicated that it was "postponing" the roundup until the Service could review its legal mandates under the Wild Horse Act and NEPA.

43.     According to information the Forest Service provided to Plaintiffs on August 11, the Tribal Council rounded up 277 horses from tribal lands as part of the Fort McDermitt Roundup on Saturday, August 10, 2013.

44.     According to the Forest Service, on Sunday, August 11, 2013, it issued a "stop work order" to the contractor hired by the federal government to assist in the Roundup.

45.     Nevertheless, according to the Forest Service, between August 11 and August 13, the Tribal Council rounded up at least an additional 140 horses, for a total of 417 horses, *including horses from the Forest Service lands covered by the Participating Agreement and Operating Plan*.  *See* Exhibit A.

46.     According to the Forest Service, all 417 horses that have been rounded have been transported to the Fallon Livestock Exchange sale yard for the auction to be held on Saturday, August 17, 2013, and those horses captured from Forest Service lands have been intermingled with other captured horses such that it cannot be determined whether a horse was gathered on tribal lands or Forest Service lands, nor whether a horse was pushed off of federal lands towards the trap sites in preparation for the roundup.  *See* Exhibit B.

47.     For the reasons set forth in paragraphs 19-25, some of the horses rounded up may be wild horses.

48.     In addition, even if the Forest Service's estimate were correct that "at least 95%" of the horses that would be removed from the range would be branded, this means that at least

5% of the 417 horses that have been rounded up – or approximately 20 such horses – are *not* branded, and could therefore be wild horses.  On August 15, 2013, the Nevada Department of Agriculture Brand Inspector manager Flint Wright told AWHPC that 80% of the 467 horses captured during the Fort McDermitt roundup were physically branded and that approximately 50-60 of these horses were unbranded.

49.     On August 13, 2013, representatives of  Plaintiffs AWHPC and WWP flew over the BLM lands adjacent to the Forest Service lands from which horses were rounded up, as well as those Forest Service lands, and saw no horses, wild or otherwise, remaining on the BLM lands bordering the Tribal lands.

50.     As recently as August 8, 2013, the Forest Service represented to Plaintiffs that there were approximately 400 horses on the Forest Service lands in question. However, as of August 14, 2013 the Service is now saying that after conducting an aerial flyover it has determined that there are only 140 horses left in this area after the Roundup.  This indicates that the Tribe must have removed approximately 240 horses from the Forest Service lands alone between  August 9-13.  For the reasons stated in paragraphs 19-25, Plaintiffs believe that many of these horses are likely wild horses that are required to be protected under the Wild Horse Act.

51.     As explained above, in planning and authorizing the Fort McDermitt Roundup, the Forest Service made no provision for ensuring that protected wild horses were not included in the Roundup.

52.     The Forest Service has represented to Plaintiffs' Counsel that it retains control over any wild horse that was removed as a result of the Fort McDermitt Roundup.

## PLAINTIFFS' CLAIMS FOR RELIEF

53.     The Forest Service's decision to authorize the roundup of horses on National

Forest lands in close proximity to the Fort McDermott Paiute and Shoshone Reservation without

taking any measures to ensure that the Roundup did not include removing wild horses from the

public lands violated the agency's duties to protect such horses under the Wild Horse Act.

16 U.S.C. §§ 1334, 1338; 36 C.F.R. §§ 222.60, 222.61, 222.65.  That decision was therefore,

arbitrary and capricious, and not in accordance with law in violation of the APA, 5 U.S.C. §

706(2).

54.      Defendants' actions have injured Plaintiffs in the manner described in ¶¶ 4- 9.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order:

1.      Declaring that Defendants have violated the Wild Free-Roaming Horses and

Burros Act and the Administrative Procedure Act;

2.      Requiring Defendants to take all measures necessary to ensure that no wild horses

are sold at the Fallon Auction or otherwise, and requiring Defendants to take all necessary steps

to ensure that all wild horses currently located at the Fallon Livestock Exchange sale yard are

identified and returned to the public lands as soon and as humanely as possible;

3.      Requiring Defendant Fallon Livestock Exchange to ensure that no horses that

cannot positively be identified as belonging to tribal members are sold at the auction;

3.      Awarding plaintiffs their attorneys' fees and costs in this action; and

4.      Granting plaintiffs any further relief as the Court may deem just and proper.


Respectfully submitted,


___/s/_____
Katherine A. Meyer

16

(D.C. Bar No. 244301)
(Motion for Pro Hac Vice pending)


___/s/_____
William S. Eubanks II
(D.C. Bar No. 987036)
(Motion for Pro Hac Vice pending)


___/s/_____
Jessica Almy
(D.C. Bar No. 996921)
(Motion for Pro Hac Vice pending)


Meyer Glitzenstein & Crystal
1601 Connecticut Avenue NW, Suite 700
Washington, DC 20009
(202) 588-5206 / (202) 588-5049 (fax)
kmeyer@meyerglitz.com
beubanks@meyerglitz.com


___/s/_____
Gordon M. Cowan, Esq.
SBN# 1781
Law Office of Gordon M. Cowan
P.O. Box 17952
Reno, Nevada  89521
(775) 786-6111
cowanlawoffice@gmail.com

Attorneys for Plaintiffs


**<u>VERIFICATION</u>**

I have reviewed the Complaint in its entirety.  Pursuant to 28 U.S.C. § 1746, I verify

under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


_____

17

Deniz Bolbol
Communications Director
American Wild Horse Preservation Campaign