1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LAURA LEIGH, et al.,

                    Plaintiffs,

    v.

TOM VILSACK, et al.,

                    Defendants.

Case No. 3:13-cv-00441-MMD-WGC

ORDER REGARDING TEMPORARY
RESTRAINING ORDER

Before the Court is Plaintiff's Motion for a Temporary Restraining Order (dkt. no. 7). Plaintiffs seek to halt the sale at auction of wild horses scheduled for tomorrow, August 17, 2013. Plaintiffs assert that absent court action, the sale will conclude before the next court business day, Monday, August 19, 2013.

Plaintiffs claim that the United States Forest Service ("USFS") and Fort McDermitt Paiute and Shoshone Tribe entered into an Agreement ("Agreement") to remove privately owned tribal horses from both tribal and Forest Service lands. (Dkt. no. 7 at 2.) The removal occurred between August 11–13, 2013, and the removed horses are scheduled to be sold at auction on August 17, 2013. (*See id.*) They are currently being held at the Fallon Livestock Exchange in Fallon, Nevada. (*See id.*) The USFS has allegedly acknowledged that the auctioned horses may be sold for slaughter. (*See id.*)

Plaintiffs assert that the Agreement provided no safeguards to protect wild horses from being captured in this roundup and that wild horses were captured and are

1  currently being held for auction. Plaintiffs seek to enjoin the sale of wild horses at the
2  August 17 auction.

3      The Court may issue a temporary restraining order ("TRO") pursuant to Federal
4  Rule of Civil Procedure 65. The standard for issuing a TRO is "substantially identical" to
5  the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D.*
6  *Brush & Co.,* 240 F. 3d 832, 839 n.7 (9th Cir. 2001). Thus, in order to obtain a TRO, a
7  plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable
8  harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor;
9  and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,*
10 555 U.S. 7, 20 (2008). Alternatively, an injunction may issue under the "sliding scale"
11 approach if there are serious questions going to the merits and the balance of hardships
12 tips sharply in plaintiff's favor, so long as plaintiff still shows a likelihood of irreparable
13 injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v.*
14 *Cottrell,* 632 F.3d 1127, 1134–35 (9th Cir. 2011). "Serious questions are those which
15 cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v.*
16 *Los Angeles Cnty.,* 339 F.3d 920, 926–27 (9th Cir. 2003) (internal quotation marks
17 omitted) (*citing Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.
18 1988)). They "need not promise a certainty of success, nor even present a probability of
19 success, but must involve a 'fair chance of success on the merits.'" *Marcos,* F.2d at
20 1362.

21     "An injunction is a matter of equitable discretion and is an extraordinary remedy
22 that may only be awarded upon a clear showing that the plaintiff is entitled to such
23 relief." *Earth Island Inst. v. Carlton,* 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation
24 marks omitted).

25     Plaintiffs bring their claims under the Administrative Procedure Act ("APA"), 5
26 U.S.C. §§ 701 *et seq.* Judicial review of Plaintiffs' claims is governed by 5 U.S.C. § 706.

27     Under 5 U.S.C. § 706(2), the court must set aside agency decisions that are
28 "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or

1   "without observance of procedure required by law."  5 U.S.C. § 706(2)(A),(D).  Although

2   the review of an agency decision is "searching and careful," the "arbitrary and capricious

3   standard is narrow" and the court cannot substitute its judgment for the agency.  *Ocean*

4   *Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005) (internal

5   quotation marks omitted).  "This deferential standard is designed to 'ensure that the

6   agency considered all of the relevant factors and that its decision contained no 'clear

7   error of judgment.'"  *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries*

8   *Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001).  In deciding whether an agency violated the

9   arbitrary and capricious standard, the court must ask whether the agency "articulated a

10   rational connection between the facts found and the choice made."  *Ariz. Cattle Growers'*

11   *Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001).  A decision that is

12   "inconsistent with a statutory mandate or that frustrate[s] the congressional policy

13   underlying a statute" cannot be upheld.  *Ocean Advocates*, 402 F.3d at 859.  Under §

14   706(2), the court has the authority to enjoin agency action that is not in accordance with

15   law.

16       The Wild Free-Roaming Horse and Burros Act ("Wild Horse Act"), 16 U.S.C. §§

17   1331 *et seq.*, requires that "wild-free roaming horses and burros shall be protected from

18   capture, branding, harassment, or death." 16 U.S.C. § 1331. It states that "[i]n no event

19   shall such wild free-roaming horses . . . be destroyed except by agents of the Secretary."

20   *Id.* at § 1334. The sale of wild horses may only occur under very specific conditions. *Id.*

21   at § 1333(e). Forest Service regulations further require that the USFS "protect, manage,

22   and control wild free-roaming horses and burros on lands of the National Forest System

23   and shall maintain vigilance for the welfare of wild free-roaming horses and burros that

24   wander or migrate from the National Forest System." 36 C.F.R. § 222.60.

25       In applying the factors required by *Winter*, 555 U.S. at 20, and *Alliance for the*

26   *Wild Rockies*, 632 F.3d at 1134–35, in deciding whether a TRO should issue, the Court

27   finds and concludes as follows.

28   *///*

1.  Plaintiffs have shown serious questions going to the merits of their claims that wild horses were improperly rounded up during the gather from August 11–13, 2013. In particular, Plaintiffs assert that: (1) there is no express provision in the Agreement to ensure that protected wild horses would not be gathered and removed (dkt. no. 11); (2) there is no evidence that USFS took measures to ensure wild horses on Forest Service land would not be gathered and removed; (3) horses rounded up by the Tribe included horses on Forest Service lands covered by the Agreement;  (4) there is evidence that between at least 5% to 20% of horses gathered were unbranded and may be protected wild horses; and (5) there is evidence that the number of wild horses in the Owyhee Complex were significantly reduced after the August 11-13 gather. While the Court found in a separate action that the evidence presented relating to this gather does not support the allegations that the Bureau of Land Management ("BLM") permitted wild horses to be gathered and removed, *see Leigh v. Salazar*, case no. 3-13-cv-6 (dkt no. 49), Defendants are not similarly situated to the BLM and cannot assert the argument that there is a lack of agency action to invoke the Administrative Procedure Act in light of the existence of the Agreement.

2.  Plaintiffs have demonstrated an immediate threat of irreparable harm if the status quo is not maintained, that is, the sale of wild horses and their possible slaughter.

3.  The potential harm to Defendants if a TRO is issued is the temporary suspension of the sale of unbranded horses kept at the Fallon Livestock Exchange, which may be resumed at a later point. The potential harm to Plaintiffs in the absence of a TRO will be the sale and slaughter of wild horses. The balance of hardships thus tips sharply in Plaintiffs' favor.

4.  The public interest is served when the Court maintains the status quo to ensure wild horses are not improperly removed and auctioned for sale to potentially be slaughtered because of an agency's action.

///

///

1    Accordingly, Plaintiffs' Motion for a Temporary Restraining Order (dkt no. 7) is
2  hereby GRANTED pending a hearing on the Motion. Plaintiffs' Motion to Expedite (dkt.
3  no. 8) is also GRANTED.

4    Defendants shall file their response by August 20, 2013. The Motion is scheduled
5  for hearing on August 21, 2013, at 1:30 p.m.   In the meantime, Defendants are
6  temporarily enjoined, pending the August 21, 2013, hearing, from permitting the sale of
7  all unbranded horses removed as a result of the August 11-13 gather conducted
8  pursuant to the Agreement at the August 17, 2013, scheduled auction.

9    DATED THIS 16th day of August 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE