## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| American Wild Horse Preservation Campaign, et al., | ) ) | |
| Plaintiffs, | ) | Case No. 3:13-00441 |
| vs. | ) | Declaration of |
| | ) | Chris Miller |
| Tom Vilsack, et al., | ) | |
| | ) | |
| Defendants. | ) | |

I, Chris Miller, declare the following:

1. I am currently employed as an Agricultural Enforcement Officer and Animal Livestock Administrator for the Department of Agriculture, State of Nevada.

2. I have been employed in this position since 2012.

3. In this position, I am charged with the responsibility for enforcement of state animal management and control regulations for the State of Nevada. These responsibilities include: livestock brand inspections for the purpose of determining ownership of livestock and declarations of kind and class of livestock in accordance with State, County, and Federal laws and regulations.

4. Acting in this capacity, I was present at the McDermitt Tribal Council horse gather from August 10 to August 12, 2013 as part of an inter-agency group requested by the Tribe to determine the Tribal brand ownership and to identify horses. Horses were inspected to determine if they should be classified as astray, defined under Nevada State regulation

1

and code as animals that cannot be identified for ownership or which no ownership has been declared upon impoundment, owned, or wild.

5. I coordinated at the McDermitt gather with the BLM Wild Horse and Burro Coordinator, Shaney Rockefeller, and the Tribal Brand Inspector. Our inspection at the McDermitt gather-site screened for presence of Wild Horses as defined under the Wild Horse and Burro Act and implementing regulations, in addition to determining tribal or non-tribal ownership.

6. As part of our inspection, the BLM Coordinator determined that none of the horses gathered at the McDermitt site were Wild Horses as defined under the Act. This determination was based upon consensus determination from all inspectors at the site.

7. The criteria for our inspection included evaluation of each horse against the following criteria: signs of domestication, including branding, castration, shoeing, bridle path marking on heads, manes for signs of grooming; demeanor, including trained behavior and fear of humans; and phenotypic evaluation, including whither conditions, condition of hooves, weight, height, breeding, and other factors. These features were compared to legacy monitoring evaluations for wild horses and domestic horses. Historical brand and ownership records were also considered in these determinations.

8. Lack of clear brands is not determinative of whether or not horses are wild. Not all domestic horses are branded by the owners. Foals of domestic horses may not be branded at all, or may not be branded for a considerable period of time after birth. Brands may fade over time, and become difficult to read or practically indiscernible without close inspection. For these reasons, many factors in addition to the presence of clear brands are evaluated to evaluate the status of a particular horse.

9. Based on a consensus of our evaluations, all horses gathered at the site were determined to be consistent with claims of tribal ownership and none met the criteria for wild horses.

10. The status of horses inspected is documented in shipping certificates, attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed: August 20, 2013

_____
Chris Miller