1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAURA LEIGH, et al., | Case No. 3:13-cv-00441-MMD-WGC |
| Plaintiffs, | ORDER REGARDING TEMPORARY RESTRAINING ORDER |
| v. | |
| TOM VILSACK, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order (dkt. no. 7). On Friday, August 16, 2013, the Court temporarily enjoined Defendants, pending a hearing, from permitting the sale of all unbranded horses removed during a Tribal Council gather from August 11-13 and held for sale at the Fallon Livestock Exchange. (Dkt. no. 20.) On Monday, August 19, the Court granted Plaintiffs' Emergency Motion to Clarify the Temporary Restraining Order stating that the Order did not enjoin the sale of domestic branded wet mares and their unbranded, nursing foals. (Dkt. no. 21.) The Court held a hearing on the Motion for a Temporary Restraining Order on August 21, 2013. As stated by the Court on the record, Plaintiffs have failed to demonstrate that the issue presented involves agency action or inaction as defined by the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.* The Court finds that the evidence suggests that the United States Forest Service ("USFS") did not participate in the roundup, the roundup was not conducted pursuant to the May 30, 2013, Participating Agreement between USFS and the Fort McDermitt Tribal Council ("Agreement"), the

1   roundup did not occur on USFS land, and no horses were removed from USFS land.
2   Additionally, Plaintiffs have not shown a likelihood of irreparable harm as the evidence
3   suggests that the gathered unbranded horses are Tribe-owned.

4   The Court may issue a temporary restraining order ("TRO") pursuant to Federal
5   Rule of Civil Procedure 65. The standard for issuing a TRO is "substantially identical" to
6   the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D.*
7   *Brush & Co.,* 240 F. 3d 832, 839 n.7 (9th Cir. 2001). Thus, in order to obtain a TRO, a
8   plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable
9   harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor;
10  and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,*
11  555 U.S. 7, 20 (2008). Alternatively, an injunction may issue under the "sliding scale"
12  approach if there are serious questions going to the merits and the balance of hardships
13  tips sharply in plaintiff's favor, so long as plaintiff still shows a likelihood of irreparable
14  injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v.*
15  *Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011). "Serious questions are those which
16  cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v.*
17  *Los Angeles Cnty.,* 339 F.3d 920, 926–27 (9th Cir. 2003) (internal quotation marks
18  omitted) (*citing Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.
19  1988)). They "need not promise a certainty of success, nor even present a probability of
20  success, but must involve a 'fair chance of success on the merits.'" *Marcos,* F.2d at
21  1362.

22  "An injunction is a matter of equitable discretion and is an extraordinary remedy
23  that may only be awarded upon a clear showing that the plaintiff is entitled to such
24  relief." *Earth Island Inst. v. Carlton,* 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation
25  marks omitted).

26  Plaintiffs bring their claims under the APA. Judicial review of Plaintiffs' claims is
27  governed by 5 U.S.C. § 706. Under 5 U.S.C. § 706(2), the court must set aside agency
28  decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

2

1    accordance with law" or "without observance of procedure required by law."  5 U.S.C. §
2    706(2)(A),(D).  Although the review of an agency decision is "searching and careful," the
3    "arbitrary and capricious standard is narrow" and the court cannot substitute its judgment
4    for the agency.  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th
5    Cir. 2005) (internal quotation marks omitted). "This deferential standard is designed to
6    'ensure that the agency considered all of the relevant factors and that its decision
7    contained no 'clear error of judgment.'" *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v.*
8    *Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001).  In deciding whether
9    an agency violated the arbitrary and capricious standard, the court must ask whether the
10    agency "articulated a rational connection between the facts found and the choice made."
11    *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001).
12    A decision that is "inconsistent with a statutory mandate or that frustrate[s] the
13    congressional policy underlying a statute" cannot be upheld.  *Ocean Advocates*, 402
14    F.3d at 859. Under § 706(2), the court has the authority to enjoin agency action that is
15    not in accordance with law.

16        The Wild Free-Roaming Horse  and  Burros  Act  ("Wild Horse Act"),  16 U.S.C.
17    §§ 1331 *et seq.*, requires that "wild free-roaming horses and burros shall be protected
18    from capture, branding, harassment, or death." 16 U.S.C. § 1331. It states that "[i]n no
19    event shall such wild free-roaming horses . . . be destroyed except by agents of the
20    Secretary." *Id.* at § 1334. The sale of wild horses may only occur under very specific
21    conditions. *Id.* at § 1333(e).   Forest Service regulations further require that USFS
22    "protect, manage, and control wild free-roaming horses and burros on lands of the
23    National Forest System and shall maintain vigilance for the welfare of wild free-roaming
24    horses and burros that wander or migrate from the National Forest  System." 36 C.F.R.
25    § 222.60.

26        In applying the factors required by *Winter*, 555 U.S. at 20, and *Alliance for the*
27    *Wild Rockies*, 632 F.3d at 1134-35, in deciding whether a TRO should issue, the Court
28    finds and concludes as follows.

1    Plaintiffs cannot show likelihood of success on the merits, even under the sliding

2    scale approach. Plaintiffs have not demonstrated that the agency acted or failed to act

3    within the meaning of the APA given Defendants' evidence that: (1) USFS did not

4    participate in the roundup at issue in this case (dkt. no. 27 ¶ 5); (2) the roundup was not

5    pursuant to the Agreement between USFS and the Tribal Council (dkt. nos. 27 ¶¶ 5-6;

6    29 ¶ 6); (3) the roundup did not occur on USFS land (dkt. no. 29 ¶ 10); and (4) no

7    horses, wild or domestic, were removed from USFS land (dkt. nos. 27 ¶ 7; 29 ¶ 10).

8    Plaintiffs present two primary pieces of evidence to argue that USFS' conduct

9    constitutes agency action under the APA: USFS representatives' inspection of horses

10   held at the Fallon Livestock Exchange on August 16, 2013, and USFS's preparations for

11   the roundup under the Agreement prior to its suspension. These arguments are

12   unavailing and Plaintiffs do not cite to any case law to support such a sweeping

13   construction of agency action under the APA. First, the inspection by several USFS

14   employees of a gather that the Tribe decided to undertake, despite USFS's suspension

15   decision, on Tribal and private land using Tribal funds does not rise to the level of

16   agency action. In fact, USFS should be encouraged to assist in protecting against the

17   unlawful sale of wild horses rather than penalized for offering their expertise. Second,

18   that USFS took steps to prepare for a roundup pursuant to the Agreement does not then

19   render it accountable for roundup activities conducted on a smaller scale undertaken by

20   a private party on private land after USFS suspended operations. Such a broad

21   construct of agency action is not supported by any cited case law and would only

22   discourage agencies from reconsidering the consequences of a planned act.

23   Moreover, Plaintiffs have not demonstrated that there is a likelihood of immediate

24   and irreparable harm. The evidence presented does not support Plaintiffs' argument that

25   the unbranded horses captured during the Tribal Council's roundup are wild horses.

26   Defendants provide declarations from several government officials stating that their

27   review of the unbranded horses held for sale indicated that the unbranded horses were

28   not wild. (See dkt. nos. 27 ¶ 11; 28 ¶ 6; 29 ¶ 13.) Additionally, Chris Miller, an

4

1  Agricultural Enforcement Officer and Animal Livestock Administrator for the Nevada
2  Department of Agriculture, stated in his declaration, and testified during the August 21
3  hearing, that he, in conjunction with a team including a Tribal Brand Inspector, made a
4  finding that the unbranded horses belonged to the Tribe based on a number of objective
5  factors. (*See* dkt. no. 28 ¶ 9–10, exh. A.) In contrast, evidence presented by Plaintiffs
6  does not contain specific support for the witnesses' conclusion that the unbranded
7  horses are wild horses. The main reason offered to support this conclusion is that the
8  unbranded horses were trying to avoid human interactions under circumstances in which
9  they had been held in holding facilities for several days since the gather. After
10  considering the evidence and hearing testimonies, the Court is persuaded that the
11  unbranded horses held pursuant to the Court's August 16, 2013, Order are not wild
12  horses subject to federal protection, but are Tribe-owned horses. The Court therefore
13  finds that Plaintiffs have not demonstrated that there is a likelihood of immediate and
14  irreparable harm.

15  The Court notes that the parties made several arguments and cited to several
16  cases not discussed above. The Court has reviewed these arguments and cases and
17  determines that they do not warrant discussion as they do not affect the outcome of the
18  Motion.

19  IT IS THEREFORE ORDERED that Plaintiffs' Motion for a Temporary Restraining
20  Order (dkt. no. 7) is DENIED.

21
22  DATED THIS 21st day of August 2013.
23
24  MIRANDA M. DU
25  UNITED STATES DISTRICT JUDGE
26
27
28